```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

```
    ORLANDO A RIVERA,

                        Plaintiff,
                                        1:15-cv-05354-NLH
    v.
                                        OPINION
    COMMISSIONER OF SOCIAL
    SECURITY,
                        Defendant.
```

**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
102 BROWNING LANE, BLDG C-1
CHERRY HILL, NJ 08003
    On behalf of Plaintiff

ELIZABETH ANN CORRITORE
NAOMI B. MENDELSOHN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the

Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, January 22, 2010. For the reasons stated below, this Court will reverse that decision, and remand the matter for further consideration of Plaintiff's application consistent with the direction of this Opinion.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On March 1, 2012, Plaintiff filed an application for disability benefits, claiming that since January 22, 2010, he is disabled and unable to work due to gout, tenosynovitis, status post left ankle surgery, major depressive disorder, schizoaffective disorder, bipolar disorder, generalized anxiety disorder, and personality disorder. Previously, Plaintiff had worked as a correction officer, a manager of a vehicle leasing company, a security guard, and a health services coordinator.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled because he retained the residual functional capacity to perform light work. Plaintiff appealed the decision. The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision as final. Plaintiff now seeks this Court's review.

2

## II. DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

3

1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the

6

> claimant will be found "disabled."
>
> 4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."
>
> 5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

7

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One). The ALJ next found that all of Plaintiff's ailments, listed above, were severe (Step Two).[1] The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria of listings 12.03, 12.04, 12.06, or 12.08 (Step Three). At Step Four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform jobs at the light exertional level, such as an assembler of plastic hospital products, assembler of electrical equipment, and a house cleaner, which jobs are in significant numbers in the national economy (Step Five).

Plaintiff argues that the ALJ erred in his decision in three ways: (1) the ALJ did not account for all of Plaintiff's severe impairments, or perform a function-by-function analysis, in determining Plaintiff's RFC; (2) the ALJ improperly assigned little weight to Plaintiff's treating physician, Dr. Garcia; and (3) the ALJ did not properly assess Plaintiff's credibility.

---

[1] The ALJ did not find Plaintiff's hypertension or polysubstance abuse to be severe impairments because they were well-controlled. Plaintiff does not dispute this finding.

The Court agrees with Plaintiff that the ALJ's determination of Plaintiff's RFC, and the ALJ's conclusion that Plaintiff is capable of light work, are not supported by substantial evidence, requiring remand for further assessment.

The Regulations define "light work" as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).  Light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day.  SSR 83–10.

The ALJ concluded that Plaintiff was capable of performing light work, but with the restrictions that the jobs (1) do not have concentrated exposure to hazards such as unprotected heights and moving machinery, and (2) are limited to unskilled work involving routine and repetitive tasks, low stress, occasional interaction with co-workers and supervisors, and no interaction with members of the public.  (R. at 18.)

9

In coming to this determination, the ALJ reviewed Plaintiff's medical records, statements by Plaintiff's ex-wife and his current partner, and Plaintiff's testimony. The ALJ observed that two of Plaintiff's severe impairments were primarily responsible for affecting his ability to work in his previous occupations. One was Plaintiff's depression and anxiety, which manifested in isolation, suicidal thoughts, including one attempt, paranoia and rage. The other was Plaintiff's de Quervain's tenosynovitis[2] in his left hand and tendonitis in his lower extremities. The ALJ concluded that even though Plaintiff suffered from these severe conditions, his complaints of their wholly disabling nature were not supported by the medical evidence.

How the ALJ came to that conclusion was based on his error in assessing Plaintiff's RFC, when he assessed Plaintiff's mental and physical impairments separately, and failed to do so

---

[2] Patients with de Quervain syndrome have painful tendons on the thumb side of the wrist. Tendons are the ropes that the muscle uses to pull the bone. You can see them on the back of your hand when you straighten your fingers. In de Quervain syndrome, the tunnel (the first extensor compartment) where the tendons run narrows due to the thickening of the soft tissues that make up the tunnel. Hand and thumb motion causes pain, especially with forceful grasping or twisting. http://www.assh.org/handcare/hand-arm-conditions/de-quervain-syndrome.

10

in combination.  With regard to Plaintiff's anxiety and depression, the ALJ recognized that Plaintiff attempted suicide in January 2013 by overdosing on Xanax and Trazadone.  The ALJ noted that upon admission to the hospital, Plaintiff required four-point restraints due to aggressive behavior against himself and the staff.  The ALJ further noted that Plaintiff was discharged four days later with a Global Assessment of Functioning score ("GAF")[3] of 50, which suggested that Plaintiff had serious symptoms and serious difficulty in social and occupational functioning.  The ALJ also noted that Plaintiff later apologized for his behavior and reported feeling "good" on the day of his discharge.  (R. at 20.)

The only other medical record that the ALJ considered after Plaintiff's January 2013 suicide attempt was by Plaintiff's

---

[3] The GAF Scale ranges from zero to one-hundred.  An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range." "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care."  Gulin v. Commissioner, 2014 WL 1466488, 4 n.2 (D.N.J. 2014) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM–IV–TR")).

11

treating physician, Dr. Garcia, who had been treating Plaintiff bi-monthly since March 2010.  In October 2013, Dr. Garcia assessed Plaintiff with a GAF of 45, which the ALJ attributed to Plaintiff's suicide attempt 10 months prior.[4]

It is unclear whether the ALJ considered any mental health records after October 2013, but to support his finding that Plaintiff's 45-50 GAF was a one-off assessment, and that Plaintiff's typical GAF was in the more functional 55-65 range[5] (R. at 22), the ALJ relied upon records from March 2010 through May 2012 (R. at 19-20).  Plaintiff's records fluctuated from March 2010, when he was assessed a GAF of 50, to a GAF of 65 in May 2012, which was assessed by a state consultative physician.  By January 2013, however, Plaintiff's GAF was 25-35 when he was admitted to the hospital, 50 upon discharge, and back to 45 when he saw Dr. Garcia in October 2013.  This declining sequence of

---

[4] A GAF rating of forty-one to fifty indicates that an individual has Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  DSM-IV-TR 34.

[5] A GAF rating of sixty-one to seventy indicates that an individual has "[s]ome mild symptoms (e.g. depressed mood and mild insomnia), or has "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV-TR 34.

12

Plaintiff's mental health status does not provide substantial evidence to support the ALJ's RFC assessment.

The ALJ also erred in Plaintiff's RFC assessment by failing to explain how Plaintiff's physical impairments did not preclude him from the requirements of light work.  The ALJ noted Plaintiff's minimal difficulties in physical activities from January 2010 through October 2012, including Plaintiff's collection of unemployment benefits and his attempts to obtain employment, which was a condition of unemployment.  (R. at 21.)  These assessments appear to override Plaintiff's diagnosis of tenosynovitis in the left hand in April 2012.  He also suffered from tendonitis in his right wrist at the same time.  (Id.)

Thus, even though Plaintiff's physical impairments were initially minimally limiting, they progressively worsened by April 2012, where both of his wrists and hands were affected by tenosynovitis/tendonitis.  As set forth above, light work requires, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and it requires either "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  The ALJ did not articulate how Plaintiff would be capable of these

13

requirements with his hand and wrist impairments.  Moreover, the ALJ specifically limited Plaintiff to jobs that involved "routine and repetitive tasks" (R. at 18), which prompted the Vocational Expert to suggest that Plaintiff was capable of assembler and cleaning jobs (R. at 23).  It is unclear how the evidence, substantial or otherwise, supports the finding that Plaintiff's physical impairments rendered him capable of light work, particularly under the ALJ's modifications.

Finally, the ALJ's assessment of Plaintiff's RFC failed to account for his age.  Plaintiff was 50 years old on January 22, 2010, the alleged onset date of his disabilities.  A "younger person" is someone under age 50, and that person's age is not considered to "seriously affect [the] ability to adjust to other work."  20 C.F.R. § 404.1563(c).  For ages 45–49, that person may be considered "more limited in their ability to adjust to other work than persons who have not attained age 45."  Id.  If a person is "closely approaching advanced age (age 50–54)," a person's age along with a severe impairment and limited work experience will be considered to seriously affect the person's ability to adjust to other work.  Id. § 404.1563(d).  The ALJ noted Plaintiff's age (R. at 7), but he did not explain how he accounted for it in his RFC assessment.

14

Based on the foregoing, the Court cannot find that the ALJ's assessment of Plaintiff's RFC, and his ultimate determination that Plaintiff was capable of light work, is supported by substantial evidence. The ALJ's burden to set forth on the record substantial evidence to support a conclusion that the Plaintiff is capable of performing some kind of gainful employment is not met here.

We note here that the Court's conclusion does not mean, however, that Plaintiff is entitled to benefits. There is a basis in the law that allows a district court to order the payment of benefits instead of remanding the case for further review, but a district court must also be certain that a plaintiff is entitled to those benefits. See Gilliland v. Heckler, 786 F.2d 178, 184-85 (3d Cir. 1986) (citations omitted) (explaining that the decision to direct the "award of benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits"). In this case, the Court cannot independently determine Plaintiff's RFC and articulate what jobs he would be able to perform, if any. See Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (explaining that a district

15

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder"). The Court is confident that upon remand, the Commissioner will provide a prompt determination, in accord with this Opinion, as to Plaintiff's benefits application.

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff retained the residual functional capacity to perform light work is not supported by substantial evidence. Even though the ALJ may ultimately come to the same conclusion upon reconsideration of Plaintiff's application, the ALJ must properly support his decision. Accordingly, the decision of the ALJ is reversed, and the matter shall be remanded.

An accompanying Order will be issued.


Date: December 19, 2016                s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.

16